FILED
CLERK, U.S. DISTRICT COURT

9/11/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ____CW____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE CHO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HATAM RESTAURANT No. 1, INC., RONITA, LLC, and DOES 1 to 10,<br><br>　　　　Defendants. | Case No.: SACV 20-01432-CJC(KESx)<br><br>**ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S UNRUH ACT CLAIM** |

## I. INTRODUCTION & BACKGROUND

On August 4, 2020, Plaintiff Grace Cho filed this action against Defendants Hatam Restaurant No. 1, Inc., Ronita, LLC, and unnamed Does, alleging violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act

("Unruh Act"). (Dkt. 1 [Complaint, hereinafter "Compl."].) Plaintiff, who uses a wheelchair for mobility, allegedly visited a restaurant owned by Defendants. (*Id.* ¶ 1, 10.) She alleges that the restaurant failed to provide wheelchair accessible parking in violation of the ADA, 42 U.S.C. §§ 1201 *et seq.*, and the Unruh Act, Cal. Civ. Code §§ 51–53. (*Id.* ¶¶ 12–13, 33, 39.) Plaintiff seeks injunctive relief under the ADA and statutory damages under the Unruh Act. (*Id.*) The Complaint asserts that this Court has jurisdiction over the ADA claim based on the existence of a federal question and jurisdiction over the Unruh Act claim based on supplemental jurisdiction. (*Id.* ¶¶ 6–7.)

Before the Court is Plaintiff's response to this Court's order to show cause as to why it should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. (Dkt. 10.) For the following reasons, this Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.

## II. DISCUSSION

### A. Supplemental Jurisdiction

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). District courts have discretion to decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine of

discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "In order to decide whether to exercise jurisdiction over pendent state law claims, a district court should consider . . . at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir. 1990) (internal quotation omitted).

District courts may decline to exercise jurisdiction over supplemental state law claims based on a number of factors, including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)–(3), *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Exec. Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008). This "inquiry is not particularly burdensome." *Id.*

### B.     ADA and Unruh Act Claims

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA,

"damages are not recoverable . . . only injunctive relief is available." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

The Unruh Act provides: "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act also provides that a violation of the ADA constitutes a violation of § 51 of the Unruh Act. *See* Cal. Civ. Code § 51(f). Though the Unruh Act also permits injunctive relief, unlike the ADA, it also allows for recovery of monetary damages. A plaintiff may recover actual damages for each offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Here, Plaintiff seeks $4,000 in statutory damages for each offense under the Unruh Act.

### C.     The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Unruh Act Claim

The Court finds that this case presents "exceptional circumstances" and that "there are compelling reasons," primarily based on comity, for declining jurisdiction over Plaintiff's Unruh Act claim. 28 U.S.C. § 1367(c)(4). California's recent legislative enactments confirm that the state has a substantial interest in this case. In 2012, California adopted heightened pleading requirements for Unruh Act accessibility claims "in an attempt to deter baseless claims and vexatious litigation." *See Velez v. Il Fornaio (Am.) Corp.*, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018). When these heightened pleading requirements did not substantially reduce vexatious filings, California enacted additional restrictions in 2015. *See* Cal. Civ. Proc. Code § 425.50. These restrictions

specifically targeted "high frequency litigants," *i.e.*, plaintiffs and attorneys who file more than ten construction-related accessibility violation complaints during a twelve-month period. *See* Cal. Civ. Proc. Code § 425.55(b)(1).

Since the 2015 reforms, high frequency litigants must comply with the following requirements in California state court: "(1) [the] complaint must allege whether it is filed by or on behalf of a high-frequency litigator; (2) the number of complaints alleging a construction related accessibility claim that were filed by the high frequency litigator in the past twelve months; (3) the reason the high frequency litigator was in the region of the defendant's business; and (4) the specific reason that the high frequency litigator desired access to the defendant's business." *See Johnson v. Morning Star Merced, LLC*, 2018 WL 4444961, at *5 (E.D. Cal. Sept. 14, 2018) (citing Cal. Civ. Proc. Code § 425.50(a)(4)(A)). High frequency litigants are also required to pay an additional $1,000 filing fee. Cal. Gov't. Code § 70616.5. The California Legislature's justification for imposing these burdens on high frequency litigants provides as follows:

> According to information from the California Commission on Disability Access, more than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. Forty-six percent of all [construction-related accessibility] complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation. This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the federal Americans with Disability Act of 1990 (Public Law 101-336).

Cal. Civ. Proc. Code § 425.55(a)(2).

Plaintiff in this case qualifies as a high frequency litigant and would be subjected to California's heightened pleading requirements and increased filing fee were she to litigate in state court. (Dkt. 10-2 ¶ 2.) However, unlike the Unruh Act's statutory damages provision, California's pleading restrictions are procedural and do not apply in federal court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). This enables high-frequency litigants like Plaintiff to duck the burdens of state law but still reap its benefits by filing ADA and Unruh Act claims together in federal court and invoking 28 U.S.C. § 1367(a). This type of gamesmanship significantly undermines California's efforts to reform Unruh Act litigation.

Unfortunately, there is considerable evidence that this has already occurred. According to statistics gathered by the Central District's Clerk's Office, in 2013, there were 419 ADA cases filed in the Central District, constituting only 3% of the civil actions filed. Since California's heightened pleading requirements took effect, that number has increased steadily each year. In 2014, the year before the imposition of the $1,000 filing fee and additional pleading requirements for high-frequency litigants, 928 such cases were filed, comprising 7% of civil cases filed in this district. By 2016, the first full year the requirements were in effect, the number was to 1,386, making up 10% of civil cases in this district. In 2017, the number of cases filed reached 1,670 (12% of civil cases), then 1,670 cases (18% of civil cases) in 2018, rising to 3,595 cases (24% of civil cases) in 2019, and 2,149 cases (an incredible 27% of civil cases) in the first six months of 2020. The only explanation for the phenomenon is the strategic evasion of California's new reforms.

California's reforms, and the corresponding increase in federal filings, raise significant concerns about forum-shopping and related issues of comity. *See Schutza*, 262 F. Supp. 3d at 1031; *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1131 (S.D. Cal. 2005). By enacting restrictions on the

filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens California's businesses may face for claims for damages under the Unruh Act. The state legislature acted to protect local businesses from baseless and vexatious litigation. *See Velez*, 2018 WL 6446169. By filing these actions in federal court, plaintiffs evade these limits, yet are still able to claim state law damages. Importantly, combining an ADA claim with an Unruh claim does not increase the range of remedies available to a plaintiff. The ADA's only remedy is injunctive relief, *see Wander*, 304 F.3d at 858, which is equally available under the Unruh Act. Because the two statutes are co-extensive in this respect, "[i]t is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court." *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017).

Some plaintiffs and their counsel have argued that they file in federal court not to evade California's restrictions, but because of the quality of the judges, the ease of the ECF system for filing, and the availability of federal ADA decisional authority. These explanations are not persuasive. As one district court recently explained:

> In attempting to show that his decision to file in federal court is not simply an attempt to evade California's heightened pleading rules, Schutza insists the 'quality of judges [and] the quality of legal rulings' is higher in federal court. This argument, of course, flies in the face of our judicial system's equal respect for state and federal courts. The convenience of electronic filing and the widespread availability of published opinions—other arguments Schutza advances—may be creature comforts that make filing in federal court more enticing, but they hardly outweigh the disservice that is done to California's efforts to implement and interpret its own law when federal courts exercise supplemental jurisdiction over these claims. . . [T]he Court can discern no basis for the state law claim being filed in federal court other than to prevent California from being able to apply and enforce its own rules.

*Alessio Leasing*, 2019 WL 1546950, at *4.

Other firms have not even tried to hide the fact that they file in federal court to evade the burdens California has enacted. One firm that files hundreds of construction-related accessibility cases in the Central District has admitted that it files these cases in federal court "to avoid the 'financial burden' of California's $1,000 high-frequency litigant fee." *Bouyer v. Balboa Square Partners Ltd. Liab. Co.*, 2020 WL 1942319, at *5 (C.D. Cal. Feb. 14, 2020). To allow federal courts to become an escape hatch that allows high-frequency litigants to pursue such claims without satisfying California's requirements is an affront to the comity between federal and state courts. What's more, filing these cases in federal court "deprive[s] the California state courts of the ability to interpret and settle unsettled issues of state law," *Brick Oven Rest.*, 406 F. Supp. 2d at 1132, and also threatens to nullify California's efforts to protect its small businesses from vexatious construction-related accessibility claims.

The Court also finds that whatever inefficiencies may arise from Plaintiff litigating his claims in two separate forums are slight in comparison to California's weighty interest in ensuring its laws are not circumvented, and in enforcing the detailed statutory regime it has set up for construction-related accessibility claims.

In light of the foregoing, the Court finds that there are "exceptional circumstances" and "compelling reasons" for the Court to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim under 28 U.S.C. § 1367(c)(4).[1] This is a state law claim.

---

[1] The Court's decision not to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim is in line with the growing number of federal courts in California that have done the same. *See, e.g.*, *Spikes v. Essel Commercial, L.P.*, 2020 WL 1701693, at *7 (S.D. Cal. Apr. 8, 2020) ("[A]s a matter of comity, and in deference to California's substantial interest in discouraging unverified disability claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim.") (internal quotation omitted); *Estrada v. Fiesta III, LLC*, 2020 WL 883477, at *5 (C.D. Cal. Jan. 9, 2020) (declining to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim because "exceptional circumstances"

The state of California has spent significant time and resources creating a system to address a surge of similar claims in order to curtail baseless and vexatious litigation. The Court sees no reason why it should permit Plaintiff to create an end run around California's system for resolving Unruh Act and other construction-related accessibility claims by exercising supplemental jurisdiction over these claims. Of course, Plaintiff remains free to assert her Unruh Act claim in state court.

## IV. CONCLUSION

For the foregoing reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. This claim is hereby **DISMISSED WITHOUT PREJUDICE** for Plaintiff to assert it in state court. The Court retains jurisdiction over Plaintiff's ADA claim.

DATED: September 11, 2020

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

and "compelling reasons" existed, and stating that Plaintiff may "pursue his Unruh Act claim in state court—the appropriate forum for such claim under these circumstances"); *Langer v. Mobeeus, Inc.*, 2020 WL 641771, at *5 (C.D. Cal. Jan. 2, 2020) (similar); *Langer v. Deddeh*, 2019 WL 4918084, at *2 (S.D. Cal. Oct. 4, 2019) (declining to exercise supplemental jurisdiction because the Unruh Act claim predominates over the ADA claim and the interests of comity and discouraging forum shopping constitute exceptional circumstances); *Theroux v. Oceanside Motel-9, LP*, 2019 WL 4599934, at *2 (S.D. Cal. Sept. 20, 2019) (similar); *Langer v. Petras*, 2019 WL 3459107, at *2 (S.D. Cal. July 31, 2019) (similar); *Spikes v. All Pro Auto Repair, Inc.*, 2019 WL 4039664, at *2 (S.D. Cal. Aug. 26, 2019) (dismissing for these reasons various state law claims including claims for violation of the Unruh Act, California Health and Safety Code Section 19955, negligence per se, and negligence); *Rutherford v. Ara Lebanese Grill*, 2019 WL 1057919, at *5 (S.D. Cal. Mar. 6, 2019) (finding that "it would be improper to allow Plaintiff to use the federal court system as a loophole to evade California's pleading requirements"); *see also Brick Oven Rest.*, 406 F. Supp. 2d at 1131 (declining to exercise supplemental jurisdiction over an Unruh Act claim after finding that "discouraging forum-shopping is a legitimate goal for the federal courts").